JAMES BOWEN, RELATOR, v. STATE HIGHWAY COMMIS-
SION OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued October 1, 1929—Decided March 25, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the relator, *John Milton.*

For the respondent, *William A. Stevens,* attorney-general,
and *Mark A. Sullivan,* for the state highway commission.

PER CURIAM.

By this rule the state highway commission is required to
show cause why a writ of *mandamus* should not issue, "direct-
ing the commission to proceed in the manner prescribed by
law, to procure an ascertainment and appraisal of the value of
the use and occupation of the lands of relator in Jersey City,
occupied by the commission since July 1st, 1922, and the
payment thereof to relator."

The following matters, among others, seem to be made to
appear:

1. The land in question is part of a tract purchased by re-
lator in November, 1922, consisting of two and fifty-three

one-hundredths acres of meadow land, irregular in shape, bordering upon the Hackensack river and the Newark Plank road in Jersey City, for which he paid $32,000.

2. Because of the accidental destruction of the bridge over the river it became necessary for the state highway commission to take a part of such land for bridge purposes, and for its contractor to occupy temporarily other parts of it in their construction of the bridge, which work was begun in September, 1922.

3. Being unable to acquire such rights by purchase, the commission entered upon parts of such land preliminary to condemnation proceedings.

4. The part taken in condemnation contained forty-one hundredths of an acre for which the owner received $47,000 in the condemnation proceeding.

5. The condemnation was as of March 14th, 1924.

6. Between 1922 and 1924 there had been an increase of from one hundred and twenty-eight to three hundred per cent. in the market value of substantially similar lands.

7. The bridge was built by an independent contractor under contract with the state highway commission.

Relator in his brief claims compensation for the temporary occupation of two tracts of land:

1. A small triangular tract lying between the condemned property and the Plank road for the alleged occupation of such tract by the contractor during the time the bridge was in the course of construction.

2. The plot actually condemned by the state highway commission for the period between the time he got title up to the institution of condemnation proceedings.

As to the triangular plot, it seems to appear to consist of a small parcel of land lying between the plot subsequently condemned and the main road.

There is certainly no satisfactory proof that respondent ever occupied this piece of ground. If any occupancy at all is shown, it is occupancy by the contractor. *Mandamus* is a remedy that is used only where there is no other legal method of redress. Whether on relator's showing he could success-

fully institute an action at law against the contractor for use and occupation, it is not necessary now to determine. But, as we think, he showed no occupancy by the state highway commission of this tract, and is therefore not entitled to a *mandamus* on this phase of the case.

As to the plot actually condemned, the respondent seems to have complied with the statute. *Cum. Supp. Comp. Stat.*, p. 3091, § 12, ¶e. It entered into possession immediately because obviously the bridge had to be restored at once, as it was the main road between Jersey City and Newark. It tried to come to an agreement with the owner, and failing, after extended negotiations, began condemnation proceedings. It is a novel proposition that there should be two condemnation proceedings with reference to the same tract of land. It seems to us that the time and place for relator to have urged what he now urges was upon the return day of the original notice in the condemnation proceeding, at which time any compensation that might be due him for the temporary occupation of his land could have been included in the inquiry, and it is interesting to notice that as a matter of fact the report of the commissioners appointed in this case to appraise the value of the lands says that the award includes "the damages to be sustained in consequence of the taking and occupation thereof."

It further appears that relator took an appeal to the Circuit Court, and the issue was framed therein in his presence, in which appeal relator was awarded a verdict, which, after appeal to the Supreme Court, was paid to him.

Now we think that the relator should not be permitted to stand by and see an issue framed which did not include all his alleged damages and then after the trial of such issue and the payment of the compensation awarded him in such action, come again into court and demand further damages which might have been included in the original proceeding. Apparently at the time there was a rising market, for the testimony of relator's own witnesses in the condemnation proceedings was that there had been an increase of from one hundred and twenty-eight to three hundred per cent. of the market value

in his property between 1922 and 1924. The commission entered upon the land in 1922. If condemnation proceedings had been started at that time the relator would have received much less than what he did as of 1924. And it is significant that the relator delayed *his* application from 1922 until July 8th, 1927, when the present application was made.

We are constrained to think that the writ must be denied, and accordingly the rule will be discharged, with costs.